IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-11-2070-PHX-SRB (MHB) |
| Respondent/Plaintiff, | CR-08-1442-PHX-SRB |
| vs. | **REPORT AND RECOMMENDATION** |
| Arturo Rodriguez-Rios, | |
| Movant/Defendant. | |

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

This matter comes before this Court upon consideration of a Motion to Vacate Sentence Pursuant to 28 U.S.C. §2255 (hereinafter, "2255 motion"), filed on October 24, 2011, by Movant Arturo Rodriguez-Rios. (CVDoc. 1.)[1] Respondent, the United States of America, filed a Response on January 23, 2012. (CVDoc. 4.) Movant filed a Reply on June 13, 2012. (CVDoc. 14.)

**BACKGROUND**

A.   Trial.

On December 3, 2008, Movant was indicted by a federal grand jury on four felony counts:  Conspiracy to Commit Hostage Taking, in violation of 18 U.S.C. §1203; Hostage

---

[1] All documents filed in CV-11-2070 will be designated as "CVDoc" and all documents filed in the related criminal action, CR-08-1442 will be designated as "CRDoc."

1  Taking, in violation of 18 U.S.C. §1203 and §2; Possession, Using and Carrying a Firearm
2  During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §924©) and §2; and
3  Harboring Illegal Aliens for Financial Gain, in violation of 8 U.S.C. §1324(a)(1)(A)(iii) and
4  (a)(1)(B)(I) and §2. (CRDoc. 50.) Movant's trial commenced on April 28, 2009. (CRDoc.
5  154.) The trial began with Government witness Oscar Pacheco, who testified that he is the
6  father-in law to Rene Hernandez-Miranda, and that sometime in October, 2008, he received
7  a call from someone demanding a ransom for the release of Hernandez-Miranda, a Mexican
8  citizen who had traveled from Mexico into the United States. (CRDoc. 197, Trial Transcript
9  ("TT") at 134-155.) Witness Pacheco testified that he called the police, and eventually law
10 enforcement agents with Immigration and Customs Enforcement ("ICE") became involved
11 in the investigation. (Id.)

12         On November 5, 2008, Phoenix ICE agents were able to use the telephone number
13 supplied by the alien smugglers, as well as utilize electronic surveillance to locate a house
14 in Peoria, Arizona where the ransom calls originated. (CRDoc. 197, TT, at 128.) A search
15 warrant was executed and the ICE agents found numerous illegal aliens present in a room in
16 the house, including Hernandez-Miranda. (Id.) During the search, ICE Agent Forcum heard
17 the sound of what he described as metal hitting porcelain, coming from a room at the end of
18 a hallway. (Id., TT at 172.) He opined that the sound was of gun-metal hitting porcelain and
19 immediately called out a demand that the person making the sound come out of the room.
20 (Id., TT at 172.) A person, later identified as Movant, emerged from the back room. (Id.)
21 ICE agents later confirmed the presence of both a 9-millimeter handgun, and a loaded
22 magazine submerged in water inside a toilet tank in the hall bathroom from which Movant
23 had emerged. (CRDoc. 198, TT at 291.)

24         At trial, witness Hernandez-Miranda, and another illegal alien present in the Peoria
25 house, witness Moreno-Garcia, testified that they had traveled from Mexico together,
26 contracted to pay an alien smuggler to smuggle them across the border, crossed the border
27 illegally, and were eventually brought to the Peoria house where their smuggling fees were
28 raised. (CRDoc. 198, TT at 226-250, 327-345.) While at the Peoria house they were

1  stripped of most of their clothing including their shoes, confined to a small windowless dark
2  bedroom and for just over two days were kept under constant guard by Movant, who was
3  seated in a chair by the door of the room, armed with a loaded handgun. (Id.)  Both
4  witnesses testified that while Movant was brandishing and "playing" with his handgun, he
5  threatened that if his ransom demands were not met, he would cut his victims into pieces and
6  flush them down the toilet or tie his victims up, shoot them, and leave their bodies in the
7  desert. (CRDoc. 198, TT at 244-47, 343-44.) Movant purportedly explained that "he could
8  shoot [the smuggled aliens] and then he could say that [the smuggled aliens] had come in to
9  rob his house, because [Movant] had a permit to carry a weapon," and that, "it was not the
10 first time, nor was it going to be the last time" that he had done such a thing. (Id., TT at 343.)

11     At the conclusion of the Government's case, Movant's counsel moved for a directed
12 verdict, and that motion was denied by the Court. (CRDoc.199, TT at 400.)  Movant then
13 testified in his defense, claiming that he was a hostage at the Peoria house as well, and had
14 been working for the alien smugglers to pay off the balance of his smuggling debt. (Id., TT
15 at 402-441.) After three days of trial, the jury convicted Movant of all charges. (Id., TT at
16 507-08.)  At sentencing, the Court concluded that, despite the U.S. Sentencing Guidelines
17 calculation, the U.S. Probation Office recommendation, and the Government's
18 recommendation, a life sentence for Counts 1, 2, and 3 would represent an "unwarranted
19 sentencing disparity when [Movant] is compared to his co-defendant Flores-Tirado," and
20 instead sentenced Movant to a below-Guidelines sentence of 15 years on Counts 1 and 2, and
21 a concurrent term of 10 years (the maximum) on Count 4, followed by the mandatory
22 minimum seven years on Count 3, to be served consecutively. (CRDoc. 200, TT at 19-20.)

23 B.    Appeal.

24     Movant appealed his conviction and sentence. (CRDoc. 192.)  Movant raised the
25 following two issues on appeal: (1) the court abused its discretion in denying Movant's
26 motion to substitute counsel; and (2) the court abused its discretion in sentencing Movant to
27 264-months in prison. (CVDoc. 4, Exh. 1.) On August 13, 2010, the Ninth Circuit Court of
28 Appeals found that the conflict between Movant and his counsel was not extensive nor

irreconcilable and did not result in a complete breakdown of attorney-client communication, and therefore the trial court did not abuse its discretion in denying Movant's motion to substitute counsel. (Id.) The Court also found that the trial court did not abuse its discretion in sentencing Movant to 264-months in prison and the sentence was not substantively unreasonable. (Id.) Movant's conviction and sentence were affirmed, and on October 1, 2010, the Ninth Circuit entered its formal mandate. (Id.)

C.      Motion under 28 U.S.C. §2255.

On October 24, 2011, Petitioner filed a timely *pro se* 2255 Motion. (CVDoc. 1.) In Grounds 1, 2, and 4 of his 2255 Motion, Movant claims that his trial and appellate counsel were ineffective because (1) trial counsel failed to conduct an adequate investigation regarding both the background of the Government's witnesses and Movant's claim that his mother paid a portion of his smuggling fee, failed to negotiate a better plea offer from the Government based upon the information he would have obtained, and failed to advise Movant about the availability of a "fast-track" plea agreement; (2) trial counsel failed to conduct an adequate investigation and communicate with Movant, resulting in trial counsel's failure to impeach a Government witness with prior illegal entries, and failing to properly present a reasonable doubt argument to the jury based upon payments made by his mother to the smugglers; and (4) appellate counsel failed to argue on appeal the lack of evidence developed during trial, despite having raised the issue during trial. (Id., at 5-9.) Movant's third claim for relief is that the Government engaged in misconduct by failing to provide Movant with Brady[2] material relating to the criminal background of its witnesses, and by failing to "correct" a statement made by witness Hernandez-Miranda during a pre-trial deposition that he had not entered the United States prior to this incident. (Id., at 8.)

///

///

///

---

[2]Brady v. Maryland, 373 U.S. 83 (1963).

**MERITS - PROCEDURAL DEFAULT**

A federal prisoner may seek relief under §2255 if (1) his sentence was imposed in violation of the United States Constitution or the laws of the United States; (2) the sentencing court had no jurisdiction to impose the sentence on the prisoner; (3) the sentence imposed exceeded the maximum sentence authorized, or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A 2255 petition is an "extraordinary remedy," however, and "will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (citation omitted). If a prisoner could have raised a claim on direct appeal but did not do so, he has "procedurally defaulted" on that claim and cannot present it in a 2255 petition unless he shows (1) cause for failing to raise it on direct appeal and "actual prejudice" from that failure or (2) that he is "actually innocent." Id. at 622 (citations omitted). A claim is exempt from the procedural default rule, however, if it cannot be presented without further factual development. Id. at 621. A claim of ineffective assistance of counsel may fall within this exemption. Masaro v. United States, 538 U.S. 500, 509 (2003). A prisoner is not entitled to an evidentiary hearing on the claim, however, if "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. §2255(b). To earn the right to a hearing, a prisoner must "allege specific facts which, if true, would entitle him to relief." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996).

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 687-88.

Regarding the performance prong, a reviewing court engages a strong presumption that counsel rendered adequate assistance, and exercised reasonable professional judgment in making decisions. See id. at 690. "A fair assessment of attorney performance requires

1  that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
2  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
3  perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting
4  Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland
5  is "extremely limited": "The test has nothing to do with what the best lawyers would have
6  done. Nor is the test even what most good lawyers would have done. We ask only whether
7  some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel
8  acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other
9  grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's
10 challenged conduct on the facts of the particular case, viewed as of the time of counsel's
11 conduct." Strickland, 466 U.S. at 690.

12      If the prisoner is able to satisfy the performance prong, he must also establish
13 prejudice. Strickland, at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000)
14 (burden is on [petitioner] to show prejudice). To establish prejudice, a prisoner must
15 demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result
16 of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable
17 probability" is "a probability sufficient to undermine confidence in the outcome." Id. A
18 court need not determine whether counsel's performance was deficient before examining
19 whether prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14.
20 "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient
21 prejudice, which we expect will often be so, that course should be followed." Id. (quoting
22 Strickland, 466 U.S. at 697).

23      The court shall not grant a prisoner an evidentiary hearing "[u]nless the motion and
24 the files and records of the case conclusively show that the prisoner is entitled to no relief,
25 . . ." 28 U.S.C. §2255; See also, Watts v. United States, 841 F.2d 275, 276 (9th Cir. 1928).
26 A hearing is not required when credibility issues can be conclusively decided on the basis
27 of documentary testimony and evidence in the record. Id., at 277. A prisoner must "allege
28 specific facts which, if true, would entitle him to relief." United States v. McMullen, 98 F.3d

1155, 1158 (9th Cir. 1996).  See also, Shah v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989) (vague and conclusory assertions with no supporting facts do not warrant habeas relief).

**CLAIMS**

A. Trial Counsel's Failure to Conduct Adequate Investigation, and Failure to Advise Movant of a Fast-Track Plea Offer Constitutes Ineffective Assistance of Counsel.

Movant claims that his attorney failed to discover the "backgrounds of all material witnesses and co-defendants." (CVDoc. 1, at 5.)  He claims this information would have shown that "at least" one of the material witnesses who testified at trial had "various 'illegal' entries into the United States." (Id.)  The only evidence he presents to support this claim is a U.S. Department of Homeland Security Immigration form I-213 that indicates that Government witness Hernandez-Miranda had entered the United States 3-years prior to the date of the offense. (CVDoc. 1, at 21-22.) Movant claims that Hernandez-Miranda testified falsely in his deposition concerning his immigration history.  Hernandez-Miranda's deposition testimony was not admitted during the trial, and therefore Movant can not show any prejudice, even if his trial counsel's performance during the deposition fell below an objective standard of reasonableness.

Movant also claims that his attorney did not investigate his allegation that payments were made by his family to "the coyotes in charge of collecting the money in [his] case" toward his debt for bringing transported to the United States, "suggesting that he was not a coyote," but a victim. (CVDoc. 1, at 5.)  He presents no evidence, other than his own assertion, that such a payment or payments were made.  Movant testified during the trial that a partial payment was made by his mother, who was in Mexico, to the alien smugglers. (CRDoc. 199, TT at 407-409.)  The Government, prior to Movant's testimony, introduced into evidence an exhibit identified as the "pollo book," located at the Peoria house, which identified the names of the aliens held hostage, their destination city, and listed the ransom moneys paid to the alien smugglers on their behalf. (CRDoc. 198, TT at 315.)  Significantly, although the book listed the names of the two aliens who testified against Movant at trial,

1  Hernandez-Miranda and Moreno-Garcia, it did not contain Movant's name. (CRDoc. 199,
2  TT at 504.)

3        The Ninth Circuit has held that counsel must conduct a "reasonable investigation' in
4  order to make informed decisions about how to best represent the client, and must make
5  "reasonable decisions" about what particular investigation is unnecessary. Hendricks v.
6  Calderon, 70 F.3d 1032, 1036 (9th Cir. 1995) (citations omitted). With respect to Movant's
7  claim regarding his mother's smuggling payment, the record does not disclose what
8  additional evidence existed that his attorney could have obtained to support his trial
9  testimony. Without some detail about what beneficial additional investigation will reveal,
10 a defendant cannot meet the prejudice prong of the Strickland test. Hendricks, 70 F.3d at
11 1042.

12       Movant also claims that his trial counsel was ineffective because he could have
13 negotiated a more favorable plea agreement for him had he been in possession of the above
14 information. This claim fails for the reason that (1) Movant does not set forth what
15 information was utilized by his counsel in negotiations with the Government to leverage the
16 best possible plea agreement, and (2) it is pure speculation, in any event, that the
17 Government's plea offer would have been any more beneficial had Movant's counsel been
18 aware of Hernandez-Miranda's lie during the deposition, and Movant's claim regarding the
19 smuggling-fee payment by his mother.   Even if Movant could demonstrate that his trial
20 counsel didn't utilize this information during plea negotiations, and erred by not doing so,
21 he can not demonstrate that, but for counsel's error, the result of the proceeding would have
22 been different.

23       Movant also claims that his trial counsel failed to advise him of the availability of a
24 "fast-track" plea agreement. Movant fails to present any evidence that such a plea agreement
25 had been tendered to him by the Government. In fact, Respondent asserts in its Response
26 that Movant was "ineligible for such a plea agreement and was not offered one." (CVDoc.
27 4, at 17.)

28

B.     Trial Counsel's Failure to Conduct an Adequate Investigation and Failure to Communicate Resulted in Trial Counsel's Failure to Impeach a Government Witness, and Failing to Properly Argue Reasonable Doubt to the Jury.

Movant claims that his trial counsel should have impeached government witness Hernandez-Martinez during trial with the fact that he had lied during his deposition regarding his immigration history. Hernandez-Martinez testified in a pre-trial deposition that the first time he had entered the United States was just prior to his being held hostage by defendant. (CVDoc. 1, at 20.) The Immigration form I-213, provided by Movant, <u>suggests</u> that Hernandez-Martinez had entered the United States before in 2005, and had "been apprehended by Immigration on six occasions.[3]" (<u>Id.</u>, at 21-22.) As previously stated, witness Hernandez-Martinez's deposition was not introduced at trial and thus the jury never read it. He testified, however.

During his trial testimony, Hernandez-Martinez did not testify that the first time he entered the United States was just prior to the hostage incident, and he was never asked the question whether or not he had previously been in the United States, or if he had previously been apprehended by immigration. Thus, during the trial, he did not lie. The question presented then, is whether or not Movant's counsel erred by not trying to impeach Hernandez-Martinez with his prior illegal entries into the United States. Since Hernandez-Martinez's prior illegal entries did not result in a criminal conviction, the only evidentiary basis for permitting such cross-examination is Fed.R.Evid. 608(b), which permits impeachment with specific instances of conduct if probative of the witness's character for truthfulness or untruthfulness.

Even if Hernandez-Martinez had in fact illegally entered the United States on prior occasions, it is difficult to see how that conduct is probative of his character for

---

[3] The Court uses the term "suggests" because the "Alien's Name" is blacked-out on the top of the form, and in the content of the form, the writer uses both the term "Subject" and "Victim Hernandez-Miranda" to identify who is being referred to. As the Government does not refute Movant's claim that the form is only referring to Hernandez-Martinez when it discusses prior entries and immigration contact, the Court must assume that the "Subject" and Hernandez-Martinez are one and the same.

- 9 -

1  untruthfulness, especially in light of the fact that he admitted during trial entering illegally
2  just prior to the events he testified about. Furthermore, if Movant's counsel was permitted
3  to impeach Hernandez-Martinez with the fact that he had lied in his deposition, he can not
4  establish what his response would be. If he denied the lie, Movant would be stuck with the
5  answer, as "specific instances of conduct for the purpose of attacking the witness' credibility
6  ... may not be proved by extrinsic evidence." United States v. Brooke, 4 F.3d 1480, 1484
7  (9th Cir. 1993). If Hernandez-Martinez admitted the lie, Movant can only speculate as to
8  whether or not Hernandez-Martinez could be rehabilitated on redirect. In light of these
9  considerations, Movant's trial counsel's performance was not objectively deficient.

10  Even if Movant could demonstrate that his trial counsel's performance in cross-
11  examining Hernandez-Martinez fell below an objective standard of reasonableness, the
12  evidence against Movant was overwhelming. Both Hernandez-Martinez and Moreno-Garcia
13  testified consistently that Movant was the person who guarded the room in the house where
14  they were held for ransom. They both testified that he sat in a chair, held a gun and made
15  threats. Both made statements to the police about the gun before they had any knowledge
16  that a gun was located and seized by law enforcement during the search. Movant was
17  observed by the search team leaving the bathroom of the house in which a gun was found in
18  the toilet tank. Just prior to Movant emerging from the bathroom, a member of the search
19  team heard the sound of what he believed was metal hitting porcelain. A chair was located
20  at the doorway of the room in which the hostages were found. Furthermore, although both
21  Hernandez-Martinez and Moreno-Garcia were found in the house without shoes and socks,
22  and testified that those items were taken from them by the kidnappers, Movant was found
23  wearing shoes. Witnesses also observed Movant to be clean and clean-shaven, distinguishing
24  him from the hostages who were unshaven and dirty, consistent with having recently walked
25  through the desert and not having recently bathed.

26  Movant claims that his trial counsel did not argue reasonable doubt to the jury. This
27  claim is belied by the record. Movant's counsel argued in his closing that the evidence was
28  insufficient to convict, that the hostage witnesses were mistaken in their identification, and

that Movant was under duress. (CRDoc. 199, TT at 484-94.) Thus, his trial counsel was not ineffective during closing argument as Movant claims.

C.  The Government Engaged in Misconduct by Failing to Provide Movant with Brady material.

Movant claims that the Government engaged in misconduct by failing to provide Movant with Brady material relating to the criminal background of its witnesses, and by failing to "correct" a statement made by witness Hernandez-Miranda during a pre-trial deposition that he had not entered the United States prior to this incident. Movant has procedurally defaulted this claim because he did not raise this issue on appeal. Bousley, 423 U.S. at 614. A claim avoids default if the facts underlying the claim could not be presented on appeal because of later factual development. Id., at 621. That is not the case here. The Government contends, and Movant does not dispute, that the discovery provided Movant's counsel included the Immigration form I-213 that contained the information about witness Hernandez-Miranda. (CVDoc. 4, at 21-22; CVDoc. 14, at 9-10.) Movant also claims that the Government engaged in misconduct by not correcting a statement made by Hernandez-Miranda during a pretrial deposition. Even if an obligation existed on the part of the Government to do so, Movant has suffered no prejudice, as the deposition transcript was not admitted during his trial.

Although Movant has procedurally defaulted this claim, the claim "may [still] be raised in habeas if he can demonstrate either 'cause' and actual 'prejudice', or that he is actually 'innocent'." Bousley, 423 U.S., at 622 (citations omitted). Movant has not, however, demonstrated cause or prejudice, or that he is actually innocent.

D.  Movant's Appellate Counsel's Failure to Raise Lack of Evidence on Appeal Constitutes Ineffective Assistance of Counsel.

At the conclusion of the Government's case during trial, Movant's trial counsel moved, pursuant to Rule 29, Fed.R.Crim.P., that the Court direct a verdict based upon the Government's failure to present sufficient evidence to convict Movant as charged. (CRDoc. 199, TT at 400.) The Court denied the motion. (Id.) At the conclusion of Movant's case, after he testified before the jury that he was not the person guarding the hostages, and that

- 11 -

1 he was in fact a hostage himself working off his debt to the kidnappers, Movant's counsel
2 again moved pursuant to Rule 29, that the Court direct a verdict. (CRDoc. 199, TT at 453.)
3 The Court again denied the motion. (Id.) The jury returned with its verdict just 2 hours and
4 8 minutes after retiring to deliberate. (Id., TT at 502, 506.)

5 Movant does not establish that his appellate counsel's failure to raise lack of evidence
6 as an issue on appeal falls below an objective standard of reasonableness. Appellate counsel
7 raised two issues on appeal, and his decision to not raise other issues may have been
8 strategic, and it may simply have been that appellate counsel did not discern any other errors
9 to raise. Even if Movant can demonstrate ineffective assistance of appellate counsel, he can
10 not show that, had the issue of lack of evidence been raised, the appellate court would have
11 granted relief, especially in light of the strength of the Government's case against Movant,
12 as outlined above. Supra, at 10.

## CONCLUSION

14 Movant has not alleged specific facts, if true, that would entitle him to relief, and thus
15 he has not earned the right to an evidentiary hearing. United States v. McMullen, 98 F.3d
16 1155, 1159 (9th Cir. 1996). The motion and the files and records of Movant's case
17 "conclusively show that [Movant] is entitled to no relief." 28 U.S.C. §2255. Movant's
18 request for a hearing, and request to vacate, set aside or correct his sentence should therefore
19 be denied.

20 **IT IS THEREFORE RECOMMENDED** that Movant's Motion Under 28 U.S.C.
21 § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (CVDoc.
22 1) be **DENIED**.

23 **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave
24 to proceed *in forma pauperis* on appeal be **DENIED** because jurists of reason would not find
25 it debatable whether the motion states a valid claim of the denial of a constitutional right and
26 whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473,
27 484 (2000).

1  This recommendation is not an order that is immediately appealable to the Ninth 2 Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of 3 Appellate Procedure, should not be filed until entry of the district court's judgment.  The 4 parties shall have 14 days from the date of service of a copy of this recommendation within 5 which to file specific written objections with the court.  See 28 U.S.C. § 636(b)(1); 6 Fed.R.Civ.P. 6(a), 6(b) and 72.  Thereafter, the parties have 14 days within which to file a 7 response to the objections. Failure to timely file objections to the Magistrate Judge's Report 8 and Recommendation may result in the acceptance of the Report and Recommendation by 9 the district court without further review.  See United States v. Reyna-Tapia, 328 F.3d 1114, 10 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the 11 Magistrate Judge will be considered a waiver of a party's right to appellate review of the 12 findings of fact in an order of judgment entered pursuant to the Magistrate Judge's 13 recommendation.  See Fed.R.Civ.P. 72.

14  DATED this 20th day of July, 2012.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge

- 13 -